UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------X

CHARLES NELSON,

                                                            **AMENDED COMPLAINT**

                              Plaintiff,

                                                            JURY TRIAL DEMANDED

                -against-

THE CITY OF NEW YORK, a municipal corporation;
POLICE OFFICER SAMUEL CAREY (Shield No. 28872);
POLICE OFFICER KAMIL PAC (Shield No. 23728); and
SERGEANT GARY CALHOUN (Shield No. 622); in
their individual and official capacities,

                                                      Defendants.
-----------------------------------------------------------------------------X

      Plaintiff, Charles Nelson, by his attorney, Ken Womble, alleges for his complaint against the defendants as follows:

## PRELIMINARY STATEMENT

    1.    Plaintiff brings this action for compensatory damages, punitive damages, and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of his civil rights guaranteed by the Constitutions of the Unites States and the State of New York.

## JURISDICTION

    2.    This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the Fourth and Fourteenth Amendments to the United States Constitution.

    3.    Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343.

    4.    Plaintiff invokes this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over any and all state constitutional or common law claims that are so related to the claims within the original jurisdiction of this Court that they form part of the same controversy.

## VENUE

5. Venue is properly laid in the Eastern District of New York under 28 U.S.C. § 1391(b)(2), in that this is the District in which the events or omissions underlying the claim arose.

## JURY DEMAND

6. Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

7. The plaintiff is an African-American male and was at all relevant times a citizen of the City and State of New York.

8. Defendant, the City of New York, was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

9. Defendant, the City of New York, maintains the New York City Police Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, the City of New York.

10. At all times hereinafter mentioned, the individually named defendants, Police Officer Samuel Carey (Shield No. 28872), Police Officer Kamil Pac (Shield No. 28872), and Sergeant Gary Calhoun (Shield No. 622), were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties.

11. At all times hereinafter mentioned, the defendants, either personally or through

their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

12. Each and all of the acts of the defendants alleged herein were done by said defendants while acting within the scope of their employment by defendant City of New York.

13. Each and all of the acts of the defendants alleged herein were done by said defendants while acting in furtherance of their employment by defendant City of New York.

## FACTS

14. On September 8, 2015, at approximately 3:00 p.m., Plaintiff Nelson was in the courtyard of his family's apartment building, located at 455 Barbey Street, Brooklyn. Plaintiff Nelson was merely sitting on a bench and was engaged in no illegal activity.

15. Defendant Police Officer Samuel Carey (Shield No. 28872), Defendant Police Officer Kamil Pac (Shield No. 28872), and Defendant Sergeant Gary Calhoun (Shield No. 622) approached Plaintiff Nelson and immediately placed him in handcuffs and searched him. Nothing illegal was found pursuant to this search.

16. None of the Defendant police officers were wearing uniforms, nor did any of the defendant officers announce themselves as police officers or display shields.

17. Plaintiff Nelson inquired of the defendant police officers why he was being arrested. Defendant police officers informed him that he matched the description of a robbery suspect.

18. Plaintiff Nelson was detained and transported to the 75th precinct located at 1000 Sutter Avenue, Brooklyn, New York.

19. While at the 75th Precinct, Defendant police officers ordered Plaintiff Nelson to remove his clothing. Defendant police officers then frisked Plaintiff Nelson, including pulling

open his underwear and inspecting his genitals and buttocks. No illegal items were found during this illegal strip search.

20. While at the 75th Precinct, Defendant police officers interrogated Plaintiff Nelson. Defendant police officers repeatedly demanded that Plaintiff Nelson tell them where the drugs or guns were. Plaintiff Nelson knew nothing about drugs or guns. At no point during this interrogation or during his entire arrest did the Defendant police officers ever read Plaintiff Nelson his Miranda rights.

21. Prior to being transported from the 75th Precinct to Brooklyn Central Booking, Plaintiff Nelson was provided a property clerk invoice. This invoice indicated that Defendant police officers decided to charge Plaintiff Nelson with violating Penal Law §220.39, criminal sale of a controlled substance in the 3rd degree, not the robbery that they had indicated at the time of his arrest. See attached, Exhibit A.

22. On September 9, 2015, Plaintiff Nelson was awaiting his arraignment in the holding cells of Brooklyn Criminal Court when a police officer informed him that he was not being charged. Plaintiff Nelson was released without charges.

## FIRST CAUSE OF ACTION
*42 U.S.C. § 1983 - Fourth and Fourteenth Amendment Violations for Unlawful Stop*
(Against the Individual Defendant Police Officers)

23. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "22" with the same force and effect as if fully set forth herein.

24. Defendants violated the Fourth and Fourteenth Amendment because they stopped plaintiff without reasonable suspicion. This is supported by the fact that Defendant police officers told Plaintiff Nelson that they were stopping him because he matched the description of a robbery suspect, but then changed the "reason" for their arrest to drug sale when they were at the 75th

4

Precinct.

25. As a result, Plaintiff Nelson sustained the damages alleged herein.

26. By virtue of the foregoing, the Defendant police officers deprived Plaintiff Nelson of his Fourth Amendment rights under the United States Constitution to be free from unlawful stop and are liable to plaintiff under 42 U.S.C. §1983.

## SECOND CAUSE OF ACTION
*42 U.S.C. § 1983 - Fourth and Fourteenth Amendment Violations for False Arrest*
(Against the Individual Defendant Police Officers)

27. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "26" with the same force and effect as if fully set forth herein.

28. As a result of Defendant police officers' aforementioned conduct, plaintiff was subjected to an illegal, improper, and false arrest by the defendants. Plaintiff Nelson was taken into custody and caused to be falsely imprisoned, detained, confined, and incarcerated by the Defendant police officers. In the above-mentioned actions, defendants acted intentionally, willfully, with malice, and without probable cause, privilege or consent.

29. Plaintiff Nelson was conscious of his confinement.

30. As a result of the foregoing, Plaintiff Nelson's liberty was restricted for an extended period of time, Plaintiff was put in fear for his safety, was humiliated, strip searched, and subjected to handcuffing and other physical restraints without probable cause or reasonable suspicion.

31. By virtue of the foregoing, the Defendant police officers deprived Plaintiff Nelson of his Fourth Amendment rights under the United States Constitution to be free from false arrest and are liable to plaintiff under 42 U.S.C. §1983.

## THIRD CAUSE OF ACTION
42 U.S.C. § 1983 - Fourth Amendment Violation for Unreasonable Search

5

(Against the Individual Defendant Police Officers)

32. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "31" with the same force and effect as if fully set forth herein.

33. While in the course of their duties and while acting under color of law, defendants affected an illegal seizure and search of plaintiff by intentionally strip-searching Plaintiff Nelson. Defendant police officers did not have probable cause or reasonable suspicion to believe that Plaintiff Nelson had, at any point, been engaged in any illegal activity connected to a robbery or narcotics. Defendant police officers also did not have evidence, reasonable suspicion or particularized belief to support the assumption that a strip search of Plaintiff Nelson's body would result in the recovery of any evidence whatsoever.

34. The defendant police officers' intentional and illegal strip search of Plaintiff Nelson caused injuries to Plaintiff Nelson, including but not limited to, humiliation and embarrassment, emotional distress, fear, violation of his body, and violation of his civil rights and liberties.

35. By virtue of the foregoing, the defendants deprived the Plaintiff Nelson of his Fourth Amendment rights under the United States Constitution to be free from unreasonable searches of his person and are liable to plaintiff under 42 U.S.C. §1983.

### FOURTH CAUSE OF ACTION
*42 U.S.C. § 1983- Fifth Amendment Violations of Due Process*
(Against Individual Defendant Police Officers)

36. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs number "1" through "35" with the same force and effect as if fully set forth herein.

37. While in the course of their duties and while acting under color of law, Defendant police officers violated Plaintiff Nelson's guaranteed right of due process under the Fifth Amendment of the United States Constitution when they falsely arrested, detained and searched Plaintiff Nelson as described herein.

38. At no time did Defendant police officers provide Plaintiff Nelson with evidence of any accusation against him. In fact, Defendant police officers told Plaintiff Nelson that they were arresting him for a robbery but they wrote up his paperwork as though he was being charged with a drug sale.

39. During all times relevant to this action, the New York City Police Department and especially the 75th Precinct, developed and maintained customs and practices exhibiting deliberate indifference to the constitutional rights of people in the City of New York. These customs and practices caused the violation of Plaintiff Nelson's due process rights.

40. By virtue of the foregoing, the defendants deprived the Plaintiff Nelson of his Fifth Amendment rights under the United States Constitution to due process and are liable to plaintiff under 42 U.S.C. §1983.

### FIFTH CAUSE OF ACTION
*42 U.S.C. § 1983- Fourth Amendment Violations for Failure to Intervene*
(Against the Individual Defendant Police Officers)

41. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "40" with the same force and effect as if fully set forth herein.

42. Defendant police officers who did not participate in Plaintiff Nelson's arrest, but observed the unlawful actions alleged herein, had an opportunity to prevent such conduct, and failed to intervene.

43. As a result, Plaintiff Nelson sustained the damages alleged herein.

44. By virtue of the foregoing, the defendants who failed to intervene deprived the plaintiff of his Fourth Amendment rights under the United States Constitution to be free from unreasonable searches and seizures of his person and are liable to plaintiff under 42 U.S.C. §1983.

### SIXTH CAUSE OF ACTION
Municipal Liability
(Against Defendant City)

45. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "44" with the same force and effect as if fully set forth herein.

46. The widely held assumption is that civil rights lawsuits deter police misconduct. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161, (1992) citing Carey v. Piphus, 435 U.S. 247, 254-257, (1978). "As far as we know, civil liability is an effective deterrent [to civil rights violations], as we have assumed it is in other contexts." See Hudson v. Michigan 547 U.S. 586, 598 (2006) citing Correctional Services Corp. v. Malesko, 534 U.S. 61, 70 (2001) and Nix v. Williams, 467 U.S. 431, 446, (1984). "It is almost axiomatic that the threat of damages has a deterrent effect (citation omitted) surely particularly so when the individual official faces personal financial liability." Carlson v. Green, 446 U.S. 14, 21, (1980), citing Imbler v. Pachtman, 424 U.S. 409, 442, and footnote 6 (1976).

47. However, the City of New York has isolated NYPD officers like Police Officer Samuel Carey, Police Officer Kamil Pac, and Sergeant Gary Calhoun from accountability for civil rights lawsuits by indemnifying officers who violate the constitutional rights of citizens, and, as a result, is preventing civil rights lawsuits from having any deterrent value to the City, the NYPD or its officers. Civil rights lawsuits against police officers have no impact on the officers' careers,

8

regardless of the expense to the City of the officers' lawsuit liability, even after multiple lawsuits.

48. The 75th Precinct of the New York City Police Department stands above the rest in number of civil rights violations. According to the City Comptroller's Office fiscal year report for 2014, over 200 Civilian Complaint Review Board complaints were made against the 75th Precinct, the only precinct in the entire city to top 200 CCRB complaints in 2014.[1] In addition to prior complaints and lawsuits, the City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers from the 75th precinct unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers.

49. Nevertheless, the City has repeatedly resisted attempts to catalog even basic information gleaned from civil rights lawsuits that could improve training, leadership, supervision, and discipline in the NYPD. The City's deliberate indifference towards the contents of civil rights litigation, individual officers repeatedly named in lawsuits, incidents repeatedly occurring in the same division, and patterns of misconduct that arise in civil rights litigation has caused the constitutional violations of excessive force and false arrest suffered by plaintiff.

50. Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct or to calculate the total liability of an individual officer or of a precinct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected, problematic supervision or leadership at the precinct level goes ignored, and repeated misconduct by individual officers goes unaccounted for. Even

---

[1] http://www.nyc.gov/html/ccrb/downloads/pdf/2014-annual-report-rev2layout.pdf, see page 20.

9

occasional judicial findings that officers have testified incredibly are not reported routinely to the police department or any oversight agencies.

51. All of the aforementioned has created a climate where police officers and detectives lie to prosecutors and in police paperwork and charging instruments, and testify falsely, with no fear of reprisal. "Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration-through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department-there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged." See Colon v. City of New York, et al, 2009 WL 4263362 (E.D.N.Y.) (Weinstein, J.).

52. In Floyd v. City of New York, 08-cv-01034-SAS-HBP, Judge Scheindlin found that the City acted with "deliberate indifference toward the NYPD's practice of making unconstitutional stops and conducting unconstitutional frisks" and adopted "a policy of indirect racial profiling by targeting racially defined groups for stops based on local crime suspect data." (Opinion and Order, dated August 12, 2013, P.13).

53. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiffs' civil rights, without fear of reprisal.

54. Plaintiff has been damaged as a result of the deliberate indifference of the

10

Defendant City.

## SEVENTH CAUSE OF ACTION
Respondeat Superior
(Against the City of New York)

55. Plaintiff repeats, reiterates, and realleges paragraphs "1" through "54" as if fully set forth herein.

56. The individual Defendant police officers were employees of the City at the time of the incidents alleged herein and each was acting at all relevant times within the scope of his or her employment with the City.

57. The City is therefore vicariously liable for the tortious acts as described and alleged herein of the Individual Officer Defendants under the common law doctrine of respondeat superior.

58. As a result of the foregoing, Plaintiff Charles Nelson is entitled to compensatory damages in an amount to be determined by a jury and is further entitled to punitive damages against the individual defendants in an amount to be determined by a jury.

WHEREFORE, plaintiff demands a jury trial and the following relief jointly and severally against the defendants:

a. Compensatory damages in an amount to be determined by a jury;

11

  b.  Punitive damages in an amount to be determined by a jury;

  c.  Costs, interest and attorney's fees, pursuant to 42 U.S.C. §1988; and

  d.  Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

Dated:  New York, New York  
   September 23, 2015      By: Ken Womble

                   */s/ Ken Womble*

                   _____

                   Ken Womble  
                   Attorney for Plaintiff  
                   Moore Zeman Womble, LLP  
                   66 Willoughby St.  
                   Brooklyn, New York 11201  
                   (T) (718) 514-9100  
                   (F) (917) 210-3700  
                   womble@brooklynattorney.nyc